93 P.3d 960 (2004)
122 Wash.App. 341
STATE of Washington, Petitioner,
v.
Gerardo CERRILLO, Respondent.
No. 20386-7-III.
Court of Appeals of Washington, Division 3, Panel Two.
July 8, 2004.
*961 John D. Knodell III, Prosecuting Attorney, Carole A. Highland, Teddy E. Chow, Deputy Prosecuting Attorneys, Ephrata, WA, for Appellant.
Garth L. Dano, Garth Dano & Associates, Robert E. Schiffner, Attorney at Law, Moses Lake, WA, for Respondent.
SCHULTHEIS, J.
Washington courts consider a person "seized" when an officer, by physical force or show of authority, restrains the person's freedom of movement and a reasonable person would not believe he or she is free to leave. State v. O'Neill, 148 Wash.2d 564, 574, 62 P.3d 489 (2003). Officers knocked on the window of a parked pickup, woke up Gerardo Cerrillo and a passenger, and asked for Mr. Cerrillo's identification. Mr. Cerrillo smelled of intoxicants. Later, one of the officers saw Mr. Cerrillo driving and stopped and arrested him for driving under the influence of alcohol. The trial court concluded Mr. Cerrillo was unlawfully seized during the first officer contact, suppressed all evidence obtained as a result of the two stops, and dismissed.
On appeal to this court, the State contended the initial stop was justified as a community caretaking function. In oral argument, the State asserted for the first time that the initial stop did not rise to the level of a seizure. We declined review of the seizure question and affirmed the decision of the trial court. State v. Cerrillo, 114 Wash.App. 259, 264, 54 P.3d 1250 (2002), review granted in part, cause remanded, 149 Wash.2d 1017, 72 P.3d 169 (2003). Subsequently, the State's petition for review was granted in part and the Supreme Court remanded to *962 this court with directions to reconsider in light of O'Neill.
Exercising our discretion under RAP 2.5(a), we now accept review of the seizure issue, withdraw Cerrillo, 114 Wash.App. 259, 54 P.3d 1250, and conclude that the officers' actions did not rise to the level of a seizure. Information gained in the initial stop gave probable cause to arrest Mr. Cerrillo for driving under the influence of alcohol. Consequently, we reverse and remand for trial.

FACTS
Early one morning in April 1999, Officer David Sands responded to a report of a suspicious vehicle parked near Denny's Restaurant in Moses Lake. He and another officer approached a parked pickup, saw two men asleep inside, and knocked on the windows to wake the men up. Either Officer Sands or the man in the driver's seat opened the door and Officer Sands asked to see the man's identification. The man complied and proved to be Mr. Cerrillo. Due to the odor of alcohol and observations of Mr. Cerrillo's behavior, Officer Sands decided Mr. Cerrillo was intoxicated. He told Mr. Cerrillo to "sleep it off" and not to drive. Clerk's Papers (CP) at 18, 54.
The officers left and Officer Sands continued to patrol the area, keeping an eye out for the pickup. About 30 minutes later, he saw the pickup leaving the parking lot and followed. Only one person was in the vehicle at this time. Officer Sands observed the driver make a turn without using a signal, move into a lane without using a signal, and fade from the inside lane to the outside lane while making a turn. When Officer Sands activated his lights, the pickup pulled over. Mr. Cerrillo, who was driving, was arrested and charged with driving under the influence of alcohol.
Before trial in district court, Mr. Cerrillo moved to dismiss pursuant to State v. Knapstad, 107 Wash.2d 346, 351-53, 729 P.2d 48 (1986) (the trial court has inherent power to dismiss a case that is not supported by sufficient evidence). He argued that the officers were not authorized to stop him during the initial encounter under any of the exceptions to the warrant requirement, including the community caretaking function. He further argued that the second stop was unavoidably tainted by the first unlawful seizure.
Officer Sands was the only witness to testify at the Knapstad hearing. He testified that he did not know who reported the suspicious vehicle and admitted he saw no evidence of a crime in or around the pickup. When asked if he would have pulled the pickup over if he had not had the prior contact, Officer Sands responded, "I really can't say one way or the other. I've made traffic stops for exactly the same thing." CP at 39.
The trial court found that the initial contact was based on the radio report of a suspicious vehicle, and not on the observations of the officers. The court additionally found that the second contact was based on knowledge gained from the first contact, and not on observations of behavior indicating unsafe or impaired driving. Concluding that Mr. Cerrillo was seized without a warrant during the first contact, the trial court further concluded that no exception to the warrant requirement justified the police intrusion. The court also found that the second stop was a pretext because it was based on information obtained from the initial, unlawful seizure. All evidence from the two contacts was suppressed and the charge was dismissed with prejudice.
The State appealed the district court's ruling to superior court, which affirmed. This court granted discretionary review. During oral arguments before this court, the State for the first time specifically argued that the initial contact between Officer Sands and Mr. Cerrillo did not rise to the level of a seizure. Because we found that the trial court's findings of fact and conclusions of law did not address the factors relevant to whether this encounter constituted a seizure, we declined to address this issue and affirmed. Cerrillo, 114 Wash.App. at 264, 54 P.3d 1250. The State petitioned for review to the Supreme Court, noting that the issue of seizure was listed in the designation of claimed errors in the motion for discretionary review to the Court of Appeals. By order entered on July 8, 2003, the Supreme Court remanded the *963 case for reconsideration in light of O'Neill. The parties submitted supplemental briefing.

ISSUE OF WAIVER RAISED AT APPELLATE ORAL ARGUMENT
We first decide whether the issue of seizure is properly before this court. Generally appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. McFarland, 127 Wash.2d 322, 332-33, 899 P.2d 1251 (1995); State v. Burden, 104 Wash.App. 507, 515, 17 P.3d 1211 (2001) (State raised the issue for the first time on appeal). Even when the party alleges a "manifest error affecting a constitutional right," RAP 2.5(a), we will not review a newly raised argument if the facts necessary to adjudicate the alleged error are not in the record. State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993).
In the first appeal, the State did not assign error to the trial court's conclusion of law that Mr. Cerrillo was seized when he was first contacted by Officer Sands. Instead, the petitioner's brief stated the issue as follows: "The Superior Court's decision should be overturned because contacts of people who remain in parked cars late at night with no apparent business [are] within the police function of community caretaking." Petitioner's Br. at 3. The specific question of seizure was first raised when the State submitted a statement of additional authorities before oral argument that listed four cases discussing when officer contact rises to the level of a seizure. Then, during oral argument, the State asserted that the issue of an exception to the warrant requirement did not arise in this case because the initial police contact was not an actual seizure. This court found that the State "apparently conceded" in trial court that the initial stop was a warrantless seizure. Cerrillo, 114 Wash.App. at 264, 54 P.3d 1250. Further concluding that the trial court's findings of fact and conclusions of law did not "address the factors relevant to whether this encounter constituted a seizure," we held there was insufficient record for review of this issue. Id. On reconsideration, we retreat from this position.
First, this court is not precluded from addressing an issue that was not raised in trial court. RAP 2.5(a). Second, although neither party at trial addressed the factors usually considered when determining seizure (because they assumed the contact was a seizure and the only issue was whether an exception applied), the trial court specifically concluded that the initial contact between Officer Sands and Mr. Cerrillo was a seizure. We review conclusions of law to determine whether substantial evidence supports the findings of fact and whether the findings support the conclusions of law. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). The relevant findings of fact regarding the initial stop are not disputed and are thus verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). Consequently, we can review the findings to determine whether they support the trial court's conclusion that the first contact amounted to a seizure.

WHETHER THE INITIAL CONTACT WAS A WARRANTLESS SEIZURE
Under article I, section 7 of the Washington Constitution, a person is seized when an officer, by physical force or show of authority, restrains the person's freedom of movement and a reasonable person under the circumstances would not have believed he or she was free to go or to decline the officer's request. O'Neill, 148 Wash.2d at 574, 62 P.3d 489. The standard is objective, based on what a reasonable person would believe, not on the motives or suspicions of the officer. Id. at 574-75, 62 P.3d 489. No seizure occurs when an officer approaches a person in public and " `requests to talk to him or her, engages in conversation, or requests identification, so long as the person involved need not answer and may walk away.'" Id. at 577-78, 62 P.3d 489 (quoting State v. Cormier, 100 Wash.App. 457, 460-61, 997 P.2d 950 (2000)).
In O'Neill, an officer saw a car parked in front of a closed store that had been burglarized twice in the previous month. The officer ran a computer check of the license plate and learned that the car had been impounded recently due to a drug situation. Noting that the windows were fogged, the officer assumed someone was inside the *964 car. He approached, shined his flashlight in the driver's face, and asked the driver to roll down the window. The driver complied, and when asked why he was there, he demonstrated that the car would not start. When asked for his identification, the driver responded he did not have identification because his driver's license had been revoked. At this point, the officer asked the driver to step out of the car. As the driver got out, the officer saw a spoon on the floorboard that appeared to contain narcotics residue. Additional evidence of narcotics use was discovered in a subsequent search of the car.
On the basis of these undisputed facts, O'Neill held that the officer's initial contact was not a seizure. 148 Wash.2d at 578-79, 62 P.3d 489. The court first noted that it is not improper for an officer to engage a citizen in conversation in a public place. Id. at 579, 62 P.3d 489. It follows that it is not an unreasonable intrusion for an officer to engage in conversation with a driver of a vehicle parked in a public parking lot. Id. On this point, the court cited with approval State v. Knox, 86 Wash.App. 831, 833, 939 P.2d 710 (1997), overruled on other grounds by O'Neill, 148 Wash.2d 564, 62 P.3d 489, wherein it was held that no seizure took place when an officer approached a vehicle parked on a ferry and asked the sleeping driver repeatedly to roll down the window. O'Neill, 148 Wash.2d at 579, 62 P.3d 489.
Pivotal, of course, is the question whether a reasonable person would have felt free to terminate the encounter. Id. at 575, 62 P.3d 489. In the case of a person sitting in a parked car, O'Neill held that such a person is free "to refuse an officer's request to open the window, and is under no obligation to engage in conversation with the officer." Id. at 579, 62 P.3d 489. Even if the officer asks for identification, the circumstances may not amount to a show of authority that rises to the level of a seizure. Id. at 580-81, 62 P.3d 489. Circumstances that might indicate a seizure include "`the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Id. at 581, 62 P.3d 489 (quoting State v. Young, 135 Wash.2d 498, 512, 957 P.2d 681 (1998)).
In this case, the trial court's findings of fact do not indicate that Officer Sands presented a show of authority sufficient to constitute a seizure of Mr. Cerrillo. The court found that Officer Sands knocked on Mr. Cerrillo's window and "then asked the driver for identification and to explain what he was doing in the parking lot." CP at 53. Mr. Cerrillo was not forced to comply by a show of force or by the tenor of the officer's words. Noticing that Mr. Cerrillo smelled of alcohol and appeared intoxicated, Officer Sands directed him not to drive and to sleep it off. As in O'Neill, the officer's actions, viewed objectively, do not support the conclusion that he compelled compliance with a show of authority. 148 Wash.2d at 581, 62 P.3d 489. Consequently, his first encounter with Mr. Cerrillo did not rise to the level of a seizure.
The trial court found that Officer Sands would not have initiated the second encounter  the traffic stop  without the information gathered from the first encounter. Because the first encounter was not an unlawful seizure, Officer Sands's awareness of Mr. Cerrillo's intoxication was lawfully gained. Officer Sands stopped Mr. Cerrillo's car because he believed he had probable cause to arrest Mr. Cerrillo for driving under the influence of alcohol, RCW 46.61.502. Probable cause exists when the facts and circumstances known to an arresting officer are sufficient to convince a reasonable person that a crime has been committed and that the person to be arrested committed the crime. State v. Neeley, 113 Wash.App. 100, 107, 52 P.3d 539 (2002); Bokor v. Dep't of Licensing, 74 Wash.App. 523, 527, 874 P.2d 168 (1994) (quoting State v. Rogers, 70 Wash.App. 626, 631, 855 P.2d 294 (1993)). Establishment of probable cause does not require evidence sufficient to show guilt beyond a reasonable doubt. Neeley, 113 Wash.App. at 107, 52 P.3d 539.
A reasonable person would agree with Officer Sands that the smell of alcohol emanating from Mr. Cerrillo during the first encounter indicated that Mr. Cerrillo likely was *965 under the influence of alcohol. Consequently, the subsequent traffic stop was based on probable cause to believe that Mr. Cerrillo was unlawfully driving under the influence of alcohol.
The trial court's suppression of the evidence and dismissal of the charge is reversed and the matter is remanded for trial.
WE CONCUR: KATO, C.J., and BROWN, J.